UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD BURLEY,

       **Plaintiff,**                 **CIVIL ACTION NO. 15-CV-12637**

**vs.**                               **DISTRICT JUDGE DAVID M. LAWSON**

                                      **MAGISTRATE JUDGE MONA K. MAJZOUB**

**PATRICK MILLER, DANIEL
HEILMAN, STACEY BOSWORTH,
and CAPTAIN BARKER**

       **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Edward Burley, currently a prisoner at the Macomb Correctional Facility in New

Haven, Michigan, filed this matter under 42 U.S.C. §§ 1983 against Defendants Patrick Miller,

Daniel Heilman, Stacey Bosworth, and Captain (Unknown) Barker,[1] alleging that they violated his

First and Eighth Amendment Rights by forcing him to stand in a freezing rain and then retaliating

---

[1] Plaintiff originally included Captain Barker as a Defendant in this matter.  (*See* docket no. 1 at 2.)  Captain Barker was never served because the Michigan Department of Corrections (MDOC) informed the U.S. Marshals Service that no such individual had "held a supervisory custody position at [Plaintiff's prison]."  (Docket no. 9.)  Plaintiff acknowledged this error and filed a "Notice of Misnomer and Request to Change Caption and Request for Caption Change." (Docket no. 16.)  In his filing, Plaintiff asks the Court to change the name "Captain Barker" to "Captain B. Kilcherman;" Plaintiff also asks the Court to serve Captain Kilcherman with a copy of the Complaint.  (*Id.*)  Plaintiff reiterates this request in his Good Cause Showing as to Defendant Barker Not Being Served."  (Docket no. 21.)  Plaintiff has not filed an Amended Complaint, and Captain Kilcherman is not named in his original Complaint.  But for the reasons discussed further, herein, even accepting Plaintiff's arguments against Captain Kilcherman as set forth in his Response to Defendants' Motion for Summary Judgment as true, Plaintiff's claims would fail. Therefore, the undersigned will recommend dismissing Plaintiff's claims against Captain Barker and will further recommend that any request to add Captain Kilcherman as a Defendant (to the extent any such request is appropriately before the Court) be denied.

against him for filing a grievance.   (Docket no. 1.)   Before the Court is Defendants' Motion for

Summary Judgment.   (Docket no. 14.)   Plaintiffs filed a Response (docket no. 17), Defendants

filed a Reply (docket no. 18), and Plaintiff filed a Sur-Reply (docket no. 19).   All pretrial matters

have been referred to the undersigned for consideration.   (Docket no. 7.)   The undersigned has

reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues

this Report and Recommendation.

## I.      Recommendation

The undersigned recommends granting Defendants' Motion for Summary Judgment [14].

Additionally, the Court should dismiss Plaintiff's claims against Defendant Barker.   Further, to

the extent Plaintiff has requested that the Court add Captain B. Kilcherman as a Defendant in this

matter, the Court should deny any such request.   This matter should be dismissed in its entirety.

## II.     Report

### A.      Factual Background

On November 11, 2013, Plaintiff was incarcerated at the Carson City Correctional Facility

(DRF) in Carson City, Michigan.   That morning, Plaintiff was scheduled to attend a Bridge

Builders class at 11:15 a.m. in Room 3 of the school building on the prison campus.   (*See* docket

no. 15-1 at 12.)   Pursuant to MDOC Policy Directive (PD), when moving from one location to

another for a "call-out," a prisoner must "[p]roceed[] to [his] destination with his daily offender

schedule arriving no sooner than ten minutes prior to the call out and no later than the scheduled

destination time."   PD 04.04.130 *Who Does What* No. 34.   Notably, "Prisoners must pay close

attention to the scheduled call-out time [because a] prisoner will be denied access and his call-out

cancelled when he is late in arriving at the call-out/destination unless the reason for being late is

beyond his control."   PD 04.04.130(Q).

      At approximately 11:05, Plaintiff left his housing unit, which is "very close" to the school building.   (*See* docket no. 14-5 at 18.)   When Plaintiff left his housing unit, it was cold and rainy. When Plaintiff arrived at the school building a few minutes later, he was ordered by Defendants Heilman and Miller to stand out in the rain.   (*See* docket no. 17 at 7.)   Plaintiff alleges that Defendants Heilman and Miller were already aware that he had asthma, but he told them again at the time that he had "asthma and other respiratory complications that would affect [his] health." (Docket no. 17 at 23.)   Defendants Heilman and Miller told Plaintiff that it "didn't concern them" and that he should leave the building and stand outside.

      When the program volunteers arrived at 11:17 a.m., Plaintiff was allowed to enter the school building.   (*See* docket no. 14-5 at 18.)   In total, Plaintiff was required to stand out in the rain for approximately 10-12 minutes.   Notably, though, Plaintiff asserts that at other times, he "was permitted to enter the school building prior to 11:15 and (sic) wait for the volunteers to arrive."   (Docket no. 17 at 7.)   Defendants contend that Plaintiff was required to stand outside of the building "pursuant to MDOC policy."

      Sometime after entering the building and participating in the class, Plaintiff informed Defendant Bosworth that he was ordered by Defendants Heilman and Miller to stand out in the rain.   (*See* docket no. 1 at 4.)   Defendant Bosworth told Plaintiff that standing out in the rain was "not gonna hurt [him]" and declined to address the issue with Defendants Heilman and Miller. (*Id.*)   The next day, Plaintiff filed a grievance, asking that Defendants Heilman and Miller be subject to disciplinary sanctions for their actions.   (Docket no. 14-5 at 17.)   Captain Kilcherman reviewed Plaintiff's grievance and suggested that Plaintiff not leave his housing unit until 11:12

a.m., so as to avoid similar problems in the future.   (*Id.* at 18.)   Plaintiff was unhappy with this resolution and continued his grievance appeal through Step 3.

Plaintiff alleges that he ultimately "sustained flu-like conditions, pneumonia, frequent asthma attacks, COPD, and other related breathing complications requiring the continued medical assistance and treatment from health care professionals."   (Docket no. 17 at 7.)   Additionally, Plaintiff contends that his "conditions worsened and he required X-rays, steroid shots, antibiotics, breathing treatments, flu medicines, and other prescriptions."   (*Id.*)   Plaintiff further alleges he had "previously informed Defendants Miller and Heilman of [his] chronic asthma before and after Law Library Call-outs," that they had "sh[aken] him down on numerous occasions," and that they had "commended about [Plaintiff] having two prescribed inhalers," which Miller "suggested he was going to contact medical to verify."   (*Id.* at 23.)   Plaintiff states that he "informed Bosworth of [his] breathing complications" at the time of the incident, and he acknowledges that Captain Kilcherman had no such knowledge until he filed his grievance.   (*Id.*)

### B.      Governing Law

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion

4

only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).   The Rule also provides the consequences of failing to properly support or address a fact:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).   "The court need consider only the cited materials, but it may consider other materials in the record."   Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."   *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.    Analysis**

Through their Motion, Defendants argue that (1) Plaintiff's conditions-of-confinement claim fails because Defendants were unaware that Plaintiff faced any risk of serious harm; (2)

5

Plaintiff's retaliation claim fails because Plaintiff faced no adverse action; and (3) Defendants are entitled to qualified immunity.

### 1.    Plaintiff's Conditions-of-Confinement Claim

As a preliminary matter, the undersigned finds unpersuasive Defendants' reliance on MDOC Policy as a rationale for ordering Plaintiff to stand in the rain.   In making their argument, Defendants rely on two alleged policy provisions: (1) prisoners are not allowed to leave their housing unit for a call-out more than ten minutes before the call-out time; and (2) prisoners are not allowed to enter the school building before the call-out time.   (*See* docket no. 14.)   Implicit in the first of these policies is the assumption that prisoners need not leave their housing unit ten minutes before a call-out; thus, Plaintiff was not required to leave his housing unit at 11:05 a.m. Therefore, Defendants contend, it was Plaintiff's fault that he was standing in the rain because he left his housing unit too early with knowledge that he would not be allowed to enter the school building.

While Defendants' position is compelling, several evidentiary issues undermine their argument.   Defendants are correct that a prisoner must "[p]roceed[] to [his] destination with his daily offender schedule arriving no sooner than ten minutes prior to the call out and no later than the scheduled destination time."   PD 04.04.130 *Who Does What* No. 34.   Thus, Plaintiff was not required to arrive at the school house any earlier than 11:15 a.m.   But the same policy directive provides for penalties if a prisoner is late for his call-out.   PD 04.04.130(Q).   Thus, if the Court were to accept Defendants' argument as dispositive proof of their lack of liability, the implicit finding would be that Plaintiff should have left his housing unit later but that he would have been punished for leaving too late.   It is clear from a reading of PD 04.04.130 that *Who Does What* No.

6

34 gives prisoners ten minutes to arrive at their destination precisely so that they are not late in violation of PD 04.03.130(Q).   A legal holding that Plaintiff should have to find a perfect balance so as not to be stuck in the rain too long but also not punished for a late arrival is unwarranted.

More importantly, though, while Defendants cite to PD 04.04.130 in support of their position that Plaintiff was not required to arrive earlier than 11:15 a.m., they do not provide any citation to policy requiring that prisoners remain outside the school building.   Indeed, while they make such a claim four times in their opening brief (and in their affidavits), a citation to any such authority is conspicuously absent.   (Docket no. 14 at 8, 13, 15, 17.)   At most, Captain Kilcherman references a "posted School Rule" in his memorandum regarding Plaintiff's grievance, which "clearly states that 'Prisoners will not loiter in the hallways, doorways or bathrooms at any time.'"   (Docket no. 14-15 at 18.)   But this "School Rule" is not MDOC Policy, and even if it were, it does not prohibit entry into the building.   And, evidencing the contrary, Plaintiff contends that he had previously been allowed to enter the building before 11:15. (Docket no. 17 at 7.)   Therefore, at a minimum, a question of fact exists regarding whether application of this rule was, in practice, discretionary.   If so, Defendants' reliance on the rule as a defense to Plaintiff's conditions-of-confinement claim is misplaced.

Regarding the substantive nature of Plaintiff's claim, the Eighth Amendment bars states from imposing punishments that are cruel and unusual, including those that involve the unnecessary and wanton infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).   "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'"   *Id.* (*citing Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and

unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Where a prisoner asserts that his claims are based on conditions of confinement, the prisoner must demonstrate that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. That is, the plaintiff must show that he faced a sufficiently serious risk to his health or safety and that the defendant acted with "'deliberate indifference' to [his] health or safety." *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying the deliberate-indifference standard to conditions of confinement claims)). "Fundamentally, the concept underlying the Eighth Amendment is nothing less than the dignity of humankind." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 564, 568 (6th Cir. 2013) (internal quotations, omissions, and modifications omitted).

To support a claim of deliberate indifference under the Eight Amendment, a Plaintiff must satisfy two components: an objective component, and a subjective component. *Id.* (*citing Harrison v. Ash*, 538 F.3d 510, 518 (6th Cir. 2008)). "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant . . . acted with a sufficiently culpable state of mind.'" *Quigley v. Toung Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

In a conditions-of-confinement context, the objective component of the deliberate-indifference inquiry is met when the plaintiff can show that the condition of confinement amounts to an "extreme deprivation." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir.2004). In such cases, "courts look to the evidence presented regarding the duration of exposure and totality of conditions contributing to the alleged

8

deprivation." *Eidam v. Bailey*, No. 10-34, 2011 WL 3269625, *3 (W.D. Mich. July 29, 2011) (citing *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir.2006)).   When claiming that the condition showed deliberate indifference to a serious medical need, "a prisoner must show that his medical needs are 'sufficiently serious.'" *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (quoting *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir.1992)).

The Sixth Circuit has not squarely addressed a prisoner's exposure to cold whether when such exposure is alleged to have exacerbated an existing respiratory condition, but the court has addressed similar claims related to environmental tobacco smoke (ETS):

> The exposure to smoke must cause more than "mere discomfort or inconvenience." *Id.* at 735. Additionally, the prisoner must demonstrate that the risk is one which society deems "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling,* 509 U.S. at 36, 113 S.Ct. 2475.

*Id.*   Additionally, "the plaintiff must establish that he has a serious medical need for a smoke-free environment, . . . or that, regardless of his current health, the level of ETS in the prison creates an unreasonable risk of serious damage to his future health."   *Palacio v. Hofbauer*, 106 F. App'x 1002, 1004 (6th Cir. 2004) (citations omitted).

Here, Plaintiff claims that he suffers from "asthma and other respiratory complications," including COPD, which required him to use two inhalers.   (*See* docket no. 17 at 1, 23.)   Plaintiff does not include a copy of his medical records; instead, he (improperly) asks the Court to order Defendants to produce the same.   (*Id.* at 3, 9.)   Nevertheless, Defendants do not deny that Plaintiff suffers from asthma, arguing only that they were unaware of his condition.   Thus, drawing all justifiable inferences in the light most favorable to Plaintiff, and therefore accepting for purposes of the instant Motion that he suffers from asthma and COPD, the objective component herein turns on whether it violates contemporary standards of decency to unwillingly

9

expose *anyone* to approximately ten minutes of freezing rain where the individual suffers from respiratory conditions. The undersigned finds that it does, particularly where the individual could have easily been let inside a building without violating any official policy.

To satisfy the subjective component of a deliberate indifference claim and show that the defendant had a sufficiently culpable state of mind, a plaintiff must show that "'the official knows of and disregards' the substantial risk of serious harm." *Villegas*, 709 F.3d at 569 (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). The plaintiff need not prove, however, "that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Instead, a plaintiff must show that (1) the defendant "subjectively perceived facts from which to infer substantial risk to the [plaintiff]," (2) the defendant "did in fact draw that inference," and (3) the defendant "then disregarded that risk." *Quigley*, 707 F.3d at 681 (internal quotations omitted). Moreover, "[d]irect evidence about a defendant's knowledge is not necessary, but rather, the knowledge aspect of the subjective component can be determined ["in the usual ways, including inference from circumstantial evidence" *Quigley*, 707 F.3d at 682]." *Villegas*, 709 F.3d at 569. For example, "a factfinder may conclude that [the defendant] official knew of a substantial risk from the very fact that the risk was obvious." *Quigley*, 707 F.3d at 682; *see also Villegas*, 709 F.3d at 569.

In this matter, the subjective inquiry turns on whether Defendants were aware of Plaintiff's asthma and whether ordering an individual with asthma to stand in the freezing rain was an obvious health risk. This inquiry diverges between Defendants Miller and Heilman and Defendant Bosworth.

10

### a. Defendants Miller and Heilman

Plaintiff claims that Defendants Miller and Heilman knew that he suffered from asthma and that they were aware of his condition because they regularly shook him down during his library call-outs and questioned him about his inhalers. Defendants Miller and Heilman claim that they were unaware of Plaintiff's condition. Neither Plaintiff nor Defendants provide any additional evidence aside from their own affidavits asserting the same. Thus, again drawing all justifiable inferences in the light most favorable to Plaintiff, the undersigned will accept for purposes of the instant Motion that Defendants were aware of Plaintiff's condition. Moreover, having made such a finding, a question of fact remains regarding whether the risk to Plaintiff was obvious; that is, even with their knowledge of Plaintiff's condition, it is unclear whether Defendants' were subjectively aware that ordering Plaintiff to stand out in the freezing rain subjected him to a substantial risk of harm and whether they disregarded that risk. Therefore, Defendants Miller and Heilman are not entitled to summary judgment on Plaintiff's substantive claim.

### b. Defendant Bosworth

Unlike his claims with regard to Defendants Miller and Heilman, Plaintiff does not assert that Defendant Bosworth was aware of his respiratory issues at the time of the incident. Indeed, Plaintiff implies that he made Defendant Bosworth aware of his condition when he reported the incident sometime later that day. (*See* docket no. 17 at 23.) Moreover, Plaintiff does not contend that Defendant Bosworth was personally involved in the incident. Therefore, Plaintiff has failed to meet the subjective component of his claim with regard to Defendant Bosworth.

### 2. Plaintiff's Retaliation Claim

11

Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999). A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Id.* (citations omitted). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. . . . If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail." *Id.* at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)).

Here, Plaintiff has failed to allege, let alone support, any claim of retaliation. He implies that either: (a) Defendants retaliated against him for previously filed grievances by ordering him to stand in the rain; or (b) Defendants retaliated against him for filing a grievance related to him being ordered to stand in the rain. In his Response to Defendants' Motion, though, Plaintiff clarifies that he "referenced generalized retaliation for me filing grievances against prison personnel as a reason why they would not permit me to return to my unit and wait." (Docket no. 17 at 21.) This "generalized retaliation" is insufficient to support his claim. Moreover, Plaintiff has provided no evidentiary link between his prior filing of grievances and the alleged retaliation; his conclusory allegations are not enough to survive Defendants' Motion. Therefore, Defendants' Motion should be granted with regard to Plaintiff's retaliation claim.

### 3.     Qualified Immunity

12

Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "'The defense of qualified immunity protects officials from individual liability for monetary damages but not from declaratory or injunctive relief.'" *Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 635 n.2 (6th Cir. 2013) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)).

The Sixth Circuit has set forth a tri-part test to determine whether a defendant is entitled to qualified immunity: whether (1) "the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred;" (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)); *see also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir.1999) (en banc) (noting that "objective legal reasonableness" is a distinct, third prong of the qualified immunity analysis). The court may, however, take up these considerations in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

Having determined that Defendants Miller and Heilman are not entitled to summary judgment on Plaintiff's conditions-of-confinement claim, the undersigned will first consider whether the law related to this matter is clearly established.

13

. . . The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Stanton v. Sims,* —— U.S. – ——, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011); *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Mullenix v. Luna,* 577 U.S. —— –, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015). An officer violates clearly established law and loses that immunity when, at the time of the challenged conduct, "'[t]he contours of [a] right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd,* 131 S.Ct. at 2083 (alteration in original) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The Supreme Court "'do[es] not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.' " *Stanton,* 134 S.Ct. at 5 (quoting *al-Kidd,* 131 S.Ct. at 2083); *Mullenix,* 136 S.Ct. at 308; *Rudlaff,* 791 F.3d at 643 ("[E]xisting case law ... must put the precise question 'beyond debate.' " (quoting *al-Kidd,* 131 S.Ct. at 2083)). The law is clearly established when the plaintiff can point either to "cases of controlling authority in his jurisdiction at the time of the incident," or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne,* 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *see also, e.g., al-Kidd,* 131 S.Ct. at 2083– 84 (applying the standard from *Wilson* ); *Sheehan,* 135 S.Ct. at 1776–78 (same).

*Kent v. Oakland Cty.*, 810 F.3d 384, 395 (6th Cir. 2016).   To make such a determination, though,

the Court must first determine precisely what "law" is in question.

The Supreme Court has "repeatedly" cautioned that courts should not define the right in question with a "high level of generality," but should instead base their analysis on a reasonably particularized definition. *al-Kidd,* 131 S.Ct. at 2084. Indeed, we have noted that an overbroad definition is not only unhelpful, but doctrinally problematic: "If a court does not carefully define the right, it risks collapsing the two qualified-immunity inquiries into one, permitting the constitutional-violation inquiry *always* to answer the clearly established inquiry." *Hagans,* 695 F.3d at 508. An overly restrictive definition . . . also poses problems: "If it defeats the qualified-immunity analysis to define the right too broadly (as the right to be free of excessive force), it defeats the purpose of § 1983 to define the right too narrowly (as the right to be free of needless assaults by left-handed police officers during Tuesday siestas)." *Id.* Indeed, the Supreme Court "do[es] not require a case directly on point." *al-Kidd,* 131 S.Ct. at 2083; *see also St. John,* 411 F.3d at 774 (noting that reviewing courts are not restricted to the precise "factual context of a prior case"). . . . .

14

*Id.* at 395-96.

In *Kent*, the Sixth Circuit was faced with determining the nature of the law in question where the defendants argued that the inquiry should be limited to a "community caretaker" context after taking the position that "no case has expressly prohibited the use of a taser when officers are securing a scene for emergency personnel."   *Id.* at 395.   The court held that this definition was too narrow, deciding that the appropriate inquiry was whether "it was clearly established that it was excessive force to tase an individual who refused to comply with officers' commands to calm down and yelled at emergency responders, but was never told he was under arrest, never demonstrated physical violence, and had his arms in the air and his back to the wall when tased." *Id.* at 396.

With that context in mind, the question at hand can neither be broadly determined based on whether an individual has a right to be free from unconstitutional conditions of confinement nor too narrowly focused.   The appropriate inquiry is whether it is clearly established that ordering a prisoner with a respiratory condition to stand in freezing rain for a short period of time amounts to a constitutional violation.   The Court should hold that it is not.   As noted, the Sixth Circuit has not addressed whether short-term exposure to cold weather violates the Eighth Amendment.   And while Plaintiff need not support his claim with cases directly on point, Plaintiff here has provided no support for his contention that the law is clearly established in this area.   Simply put, while Defendants' decision may have been ill-advised and ethically questionable, the law supporting Plaintiff's allegation is not sufficiently clear so that a reasonable official would have understood that his actions violated Plaintiff's rights.   Therefore, Defendants are entitled to qualified immunity.

###### 4.      Defendant Barker and Captain Kilcherman

As noted, Plaintiff has failed to serve Defendant Barker, and he acknowledges through his "Notice of Misnomer" that Defendant Barker was not a proper defendant in this matter. Therefore, his claims against Defendant Barker should be dismissed.

To the extent that Plaintiff seeks to add Captain Kilcherman as a defendant in this matter, he has made no such request through a Motion to Amend.   More importantly, though, any such request would be futile.   A court is to allow parties to amend their pleadings freely "when justice so requires." Fed.R.Civ.P. 15(a)(2). "A party seeking to amend an answer must act with due diligence if it intends to take advantage of [Rule 15's] liberality." *Saginaw Chippewa Indian Tribe of Michigan v. Granholm*, 05-10296, 2008 WL 4808823, at *8 (E.D. Mich. Oct. 22, 2008) (Ludington, J.) (internal quotation omitted). "A court may deny leave to amend when a party unnecessarily delayed in seeking amendment, thereby []causing prejudice to the other party or unduly delaying the litigation."   *Id.* (citation omitted).  And a court may also deny leave to amend when the proposed amendment would be futile.  *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003). To determine whether an amendment would be futile, the Court determines whether the amendment could survive a motion to dismiss pursuant to Rule 12(b)(6).  *Keely v. Department of Veterans Affairs*, 10-11059, 2011 WL 824493, at *1 (E.D. Mich. Mar. 3, 2011) (Majzoub, M.J.) (citation omitted).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281

16

F.3d 613, 619 (6th Cir. 2002).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations and citations omitted).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* To make this determination, a court may apply the following two-part test: (1) "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume the veracity [of the remaining allegations] and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

Here, although Plaintiff has failed to include any factual allegations against Captain Kilcherman, it appears that his only interaction with this matter is as the individual initially responding to Plaintiff's grievance.  (*See* docket no. 14-5 at 18.)  But the denial of a grievance alone fails to state a claim under section 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Therefore, any request to add Captain Kilcherman as a defendant in this matter should be

17

denied.

**D.      Conclusion**

For the reasons discussed herein, the Court should grant Defendants' Motion for Summary Judgment [14], and this matter should be dismissed in its entirety.

**III.      Notice to Parties Regarding Objections**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).    Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.   Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.   The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

18

Dated:   March 17, 2016                    s/ Mona K. Majzoub
                                           MONA K. MAJZOUB
                                           UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served on Plaintiff
Edward Burley and counsel of record on this date.

Dated:   March 17, 2016                    s/ Lisa C. Bartlett
                                           Case Manager