UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD BURLEY,

                    Plaintiff,                          Case Number 15-12637
v.                                                      Honorable David M. Lawson
                                                        Magistrate Judge Mona K. Majzoub
PATRICK MILLER, DANIEL
HEILMAN, STACEY BOSWORTH,
and CAPTAIN BARKER,

                    Defendants.
_____/

## OPINION AND ORDER REJECTING IN PART REPORT AND RECOMMENDATION, SUSTAINING IN PART PLAINTIFF'S OBJECTIONS, GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DISMISSING CERTAIN CLAIMS AND PARTIES, AND CONTINUING ORDER OF REFERENCE

        Plaintiff Edward Burley, a Michigan prisoner representing himself, filed this lawsuit under

42 U.S.C. § 1983 against prison correction officers alleging that they forced him to stand in freezing

rain and then sit in a classroom in his wet clothes, knowing that he suffered from respiratory

ailments, including asthma. That conduct, he says, violated the Eighth Amendment, and also the

First Amendment, because it was in retaliation for the plaintiff's past grievances. The Court referred

the case to United States Magistrate Judge Mona K. Majzoub under 28 U.S.C. § 636(b)(1)(B) and

E.D. Mich. LR 72.1(b)(3) to conduct pretrial proceedings. Thereafter, the defendants filed a motion

for summary judgment. Judge Majzoub filed a report on March 17, 2016 recommending that the

defendants' motion be granted and the case be dismissed.

        The magistrate judge concluded that the facts of the case did not support the First

Amendment violation claim, or any Eighth Amendment claim against defendant Stacey Bosworth.

She also concluded that the plaintiff demonstrated that defendants Patrick Miller and Daniel

Heilman violated the plaintiff's rights under the Eighth Amendment, but those rights were not clearly established at the time of the events, and therefore those defendants were entitled to dismissal on the basis of qualified immunity. None of the defendants objected to the report. The plaintiff filed timely objections to the report and recommendation, and the matter is now before the Court for fresh review.

I.

In her report, the magistrate judge focused on Burley's allegation that he was forced to wait in freezing rain before he was allowed to enter a building for a program class. According to Burley, on November 11, 2013, he was authorized to attend a Bridge Builders class in prison school building 300. Burley alleges that when he entered the building 10 to 12 minutes before the class began, defendants Miller, Heilman, and Bosworth ordered him to leave the building and "to stand out in the freezing rain for a period of time, without proper winter attire." Burley says that he informed Miller, Heilman, *and Bosworth* that he had asthma and other respiratory complications. Nonetheless, they ordered him back into the freezing rain. And even though his housing unit was 40 yards from the school building, he was not allowed to return to his unit to avoid the severe weather conditions. But Burley also asserted that once he was admitted into the building, he was not allowed to change his clothes and was forced to sit in his saturated clothing for two hours. The magistrate judge ignored that aspect of Burley's complaint when she conducted her qualified immunity analysis.

The defendants argued to the magistrate judge that their actions were justified by MDOC policy regarding prisoner call-outs for attendance at programs. Judge Majzoub rejected that rationale, concluding that the policies do not support the order for the plaintiff to stand in the rain

-2-

or prohibit him from entering the building at the time he arrived before his class.  Judge Majzoub also observed that the plaintiff's conditions-of-confinement claim required proof of a subjective component and an objective component, and that the plaintiff satisfied both as to defendants Miller and Heilman.  The defendants did not object to those findings, and therefore the Court will not discuss them further.  *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (explaining that "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have'") (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

Judge Majzoub also found that Burley had not established that defendant Bosworth was aware of Burley's respiratory ailments when he ordered him to stand in the rain, or that Bosworth was involved personally in the incident.  She concluded, therefore, that the plaintiff had not supplied evidence to satisfy the subjective component of his Eighth Amendment claim against that defendant, and recommended dismissal.

Turning to the qualified immunity question, the magistrate judge then observed that the Sixth Circuit has not dealt with a conditions-of-confinement case under the Eighth Amendment in which a prisoner complained of exposure to cold weather.  She defined the issue as follows: "whether it is clearly established that ordering a prisoner with a respiratory condition to stand in freezing rain for a short period of time amounts to a violation."  She concluded that such a proposition was not "clearly established," a reasonable prison guard would not have understood that his actions violated the plaintiff's constitutional rights, and therefore the defendants were entitled to qualified immunity.

-3-

Finally, Judge Majzoub could not find any evidence that supported the plaintiff's retaliation claim, and recommended that it be dismissed.

The report and recommendation was filed on March 17, 2016. Because no objections were presented by the Clerk to the Court within the deadline, the Court adopted the report and entered judgment on April 4, 2016. The following day, Burley's objections were docketed. Because the objections were dated March 25, 2016, the Court determined that they were timely and vacated the order adopting the magistrate judge's report and judgment. On April 5, 2016, Burley also filed a "Rule 56(f) motion," in which he suggested that discovery may unearth some facts that would support his claims. The defendants subsequently filed a response to Burley's objections, but, as noted above, did not file objections of their own.

II.

The plaintiff filed nine objections. The filing of timely objections to a report and recommendation requires the Court to "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the Court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). The review, however, is concentrated on those aspects of the report with which the parties take issue. "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus

-4-

attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

A.

In his first objection, Burley argues that the magistrate judge erred by failing to consider the full span of the transaction, that is, not only the few minutes that he was exposed to freezing rain, but also the two hours that he was also ordered to sit in his wet clothing in a cold room for the duration of the two-hour "call-out."  He points out that he was prohibited from returning to his unit to change into a dry set of clothes, and he argues that such treatment amounts to cruel and unusual punishment.

The plaintiff has a point.  Although this added fact likely would not have altered the magistrate judge's conclusions that there was an Eighth Amendment violation, that fact — which is supported by the record — is material to the qualified immunity analysis, as noted below.

B.

Next, Burley believes that the magistrate judge misapplied the "reasonable person" component of the qualified immunity test outlined in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). *See id.* at 817-18 (holding " that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which *a reasonable person* would have known") (emphasis added).  The defendants argue that there is no evidence that they knew of Burley's medical conditions prior to the alleged incident, and that it was not sufficiently clear at the time that the defendants' actions were unconstitutional.

The defendants' contentions are at odds with the record facts.  Taking the facts in the light most favorable to the plaintiff, as the Court must do when adjudicating a motion for summary judgment under Federal Rule of Civil Procedure 56, *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009), the magistrate judge concluded correctly that defendants Miller and Heilman were aware of Burley's medical conditions, noting that Burley himself told them that he had asthma when on a previous occasion the defendants "shook him down" because he was carrying two inhalers.

The magistrate judge applied a three-part test to assess the defendants' qualified immunity claim.  The Supreme Court has held that a claim of qualified immunity must be examined in two stages, *see Saucier v. Katz*, 533 U.S. 194, 200 (2001): "[f]irst, a court must consider whether the facts, viewed in the light most favorable to the plaintiff, 'show the officer's conduct violated a constitutional right,'" and "the court must then decide 'whether the right was clearly established.'" *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Saucier*, 533 U.S. at 201-02).  At one time, the Sixth Circuit expanded that inquiry into a three-step sequential analysis, stating: "The first inquiry is whether the plaintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established rights.'" *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 219 (6th Cir. 2004) (quoting *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).  Later, however, the Sixth Circuit reiterated the requirement announced in *Saucier v. Katz*

-6-

that this defense must be analyzed in two stages.  *See Lyon v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005).

Once the qualified immunity defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established."  *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai,* 707 F.3d 675, 680 (6th Cir. 2013)).  The plaintiff must clear both hurdles, but the Court may take up the questions in either order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (abrogating in part *Saucier*, 533 U.S. at 201).

The qualified immunity defense may be raised at any stage of the case.  When it is raised in a motion for summary judgment, as here, courts must weave the summary judgment standard into each step of the qualified immunity analysis.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  That means that the court must view the facts in the light most favorable to the plaintiff, *Saucier*, 533 U.S. at 201; "[i]n qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts."  *Scott*, 550 U.S. at 378.

A correctional officer is entitled to qualified immunity if "a reasonable officer could have believed" that his actions were lawful "in light of clearly established law and the information the [officer] possessed."  *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  "[A] 'reasonable' belief could also be a mistaken belief, and the fact that it turned out to be mistaken does not undermine its reasonableness as considered at the time of the acts."  *Davenport v. Causey*, 521 F.3d 544, 552 (6th Cir. 2008) (citing *Saucier*, 533 U.S. at 205).  In other words, "[q]ualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful."  *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

These principles govern the adjudication of the defendants' motion for summary judgment. Regardless of the test that the plaintiff believes the magistrate judge applied, the Court will apply the law as stated here in its fresh review.

C.

The thrust of Burley's third, seventh, eighth, and ninth objections is that the magistrate judge erred by failing to find that there was a clearly established right to be free from exposure to severe weather and temperatures. He argues that the magistrate judge did not consider the full extent of his exposure to severe conditions, that the magistrate judge too narrowly focused her inquiry into whether there was a clearly established right, and that she failed to consider persuasive authority. The defendants argue that the magistrate judge applied the correct legal standard, and agree with the magistrate judge that the contours of the right Burley is advancing were not sufficiently clear to put them on reasonable notice.

The defendants also respond to the plaintiff's objections by insisting that Burley's official capacity claims should be dismissed because neither the State nor its officials acting in their official capacities are "persons" under 42 U.S.C. § 1983. Although that may be true, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), the argument talks past the qualified immunity questions. In fact, that issue was never addressed in the magistrate judge's report, and it is not clear why it is being raised in a response to the plaintiff's objections. The magistrate judge addressed the plaintiff's individual capacity claims.

In advancing their contention that Burley's Eighth Amendment right was not clearly established, the defendants insist that Burley improperly relies on cases that are not from the Supreme Court, the Sixth Circuit, or the Michigan Supreme Court. They believe that because none

-8-

of the cases the plaintiff cites are binding, the magistrate judge concluded correctly that the plaintiff failed to show that the defendants' alleged actions did not violate constitutional rights that were "clearly established." The defendants, however, misunderstand the manner in which a right can become established. "The law is clearly established when the plaintiff can point either to 'cases of controlling authority in his jurisdiction at the time of the incident,' *or* 'a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" *Kent v. Oakland Cty.*, 810 F.3d 384, 395 (6th Cir. 2016) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999) (emphasis added)). Therefore, it is entirely appropriate to consider authority that is not binding in this jurisdiction.

As the magistrate judge noted, when assessing the clarity with which the constitutional right was established at the time of the officers' conduct, courts must guard against defining the right too broadly. *Saucier*, 533 U.S. at 201 (emphasizing that "[t]his inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition"). On the other hand, there need not be "a case directly on point, [as long as] existing precedent [has] placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). When there is no case directly on point, the court must find that definitional sweet spot, since "it defeats the qualified-immunity analysis to define the right too broadly . . . [and] it defeats the purpose of § 1983 to define the right too narrowly." *Kent*, 810 F.3d at 396.

The Supreme Court has held that prison conditions may be uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *see also Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual

-9-

punishment within the meaning of the Eighth Amendment."). But "[t]he Amendment also imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates." *Ibid.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). The Sixth Circuit has said that in considering whether an Eighth Amendment violation has occurred, a court must consider "'[t]he circumstances, nature, and duration of a deprivation.'" *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 220 (2007) (quoting *Johnson v. Lewis*, 27 F.3d 726, 731 (9th Cir. 2000)).

"*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise — for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). The record in this case shows that Burley suffered from chronic obstructive pulmonary disease (COPD) and asthma, and the defendants knew it. He says that exposure to freezing rain for approximately 10 minutes, and then being forced to remain in his wet clothing for two hours, aggravated his conditions and required X-rays, steroid shots, breathing treatments, and additional medications. He says that any reasonable officer, with "the information the [officer] possessed," *Anderson*, 483 U.S. at 641, and a whit of common sense, would know that forcing his exposure to cold, wet conditions over an extended period would amount to cruel and unusual punishment in violation of clearly established law.

Certainly, the general principles are well established. As the Supreme Court has explained:

-10-

> "'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Whitley v. Albers,* 475 U.S. 312, 319 (1986) (some internal quotation marks omitted). We have said that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). In making this determination in the context of prison conditions, we must ascertain whether the officials involved acted with "deliberate indifference" to the inmates' health or safety. *Hudson v. McMillian,* 503 U.S. 1, 8 (1992). We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. *Farmer v. Brennan,* 511 U.S. 825, 842 (1994).

*Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002). Burley argues that even if his encounter with the prison officers presented "novel factual circumstances," existing Eighth Amendment law in effect at the time "gave [the officers] fair warning that their alleged treatment of [him] was unconstitutional." *Id.* at 741.

Burley cites three cases that he argues the magistrate judge should have considered: *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), *Dixon v. Godinez*, 114 F.3d 640 (7th Cir. 1997), and *Del Raine v. Williford*, 32 F.3d 1024 (7th Cir. 1994).

In *Burchett*, police officers detained the defendant in the back of an unventilated police car in 90 degree heat for three hours. *Burchett*, 310 F.3d at 940. The Sixth Circuit found that the right to be free from exposure to extreme heat when being detained was a clearly established right under the Fourth Amendment. *Id.* at 946 (citing *Hope v. Pelzer*). The panel denied qualified immunity to the defendants and found that the right was clearly established, in part, by observing that in *Hope*, the Supreme Court held "that handcuffing [an] inmate to [a] hitching post, and thus causing 'unnecessary exposure to the heat of the sun,' violated clearly established Eighth Amendment right." *Ibid*.

In *Hope*, Alabama prison officials had a practice of handcuffing prisoners to "hitching posts" when they refused to work on the chained work squads. 536 U.S. at 734. After an altercation with

a guard, Larry Hope was hitched to the post without his shirt for approximately seven hours while the sun burned his skin. *Ibid*. He was given limited water, denied bathroom breaks, and subjected to taunting by the guards. *Ibid*. The Court found it "obvious" that the unnecessary and wanton infliction of pain violated the Eighth Amendment. *Id*. at 738. The Court observed that the defendant was subjected "to unnecessary pain caused by the handcuffs and the restricted position of confinement for a 7-hour period, to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation." *Ibid*.

Both *Burchett* and *Hope* support Burley's position that there is a clearly established right to be free from exposure to extreme temperatures by prison officials. Burley's position is further bolstered by the two Seventh Circuit cases he cites.

In *Dixon*, an Illinois prisoner brought a conditions-of-confinement claim under the Eighth Amendment, asserting that his cell was maintained at inadequate temperatures during the winter months of his four-year sentence. *Dixon*, 114 F.3d at 642-45. The prisoner described ice forming on the walls of his cell. *Id*. at 642. He was issued long underwear, a cap, gloves, and a jacket; he was also given two sheets and a blanket. *Ibid*. However, he "asserted that this clothing was insufficient to keep his extremities from getting freezing cold while he [sat] in his cell." *Ibid*. The court held that there was a material issue of fact "as to whether the prison's standard-issue clothing and bedding provided [the prisoner] with the constitutionally necessary minimum protection against severe cold." *Id*. at 644. The court reasoned that "it is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are

-12-

unconstitutional." *Id*. at 643.  However, shorter durations have been found unconstitutional when the cold is particularly severe.

In *Del Raine v. Williford*, 32 F.3d 1024 (7th Cir. 1994), when correctional officials were conducting searches of the prisoner plaintiff's cell, they would put the plaintiff in an empty cell without any clothes.  *Id*. at 1031.  The temperature in the cell was "bitter cold" when the outside wind chill was 40 to 50 degrees below zero because of broken windows in the prison.  *Ibid*.  The district court adopted the magistrate judge's recommendation to dismiss the plaintiff's Eighth Amendment claim, concluding that exposure to cold was merely uncomfortable and not unconstitutional because it did not endanger the plaintiff's health.  *Id*. at 1028.  The court disagreed and cited several conditions-of-confinement cases that found exposure to severe cold to be a violation of the Eighth Amendment.  *Id.* at 1031-35: *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) ("The averments of a cold cell were supplemented by specifics: that the temperature was as low as 60 degrees, that it was 'ice cold,' that plaintiff slept on the floor and on occasion huddled with a roommate, sleeping between two mattresses."); *Wright v. McMann*, 460 F.2d 126, 129 (2d Cir. 1972) (finding cruel and unusual punishment when an inmate was confined for eleven days, naked, without soap, towels, or toilet paper, and without bedding of any kind, forcing the inmate to sleep on the floor, the temperature being "sufficiently cold to cause extreme discomfort."); *Kimbrough v. O'Neil*, 523 F.2d 1057 (7th Cir. 1975) (prisoner was placed in solitary confinement for three days without mattress, bedding, or blankets); *Lewis v. Lane*, 816 F.2d 1165 (7th Cir. 1987) (two state prisoners alleged that the heat in their cells was maintained at an unreasonably low temperature during December 1983 and January 1984, and that the lack of heat was "severe enough to produce physical discomfort."); *Lareau v. Manson*, 651 F.2d 96 (2d Cir. 1981) (prisoners are

-13-

entitled to adequate shelter); *Wright v. Rushen*, 642 F.2d 1129, 1132–33 (9th Cir. 1981) (an institution has Eighth Amendment obligation to provide prisoners with adequate shelter or quarters); *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (the state must provide reasonably adequate heat to inmates), *cert. denied*, 450 U.S. 1041(1981); *Kirby v. Blackledge*, 530 F.2d 583, 587 (4th Cir. 1976) (allegation of inadequate heating reaches the level of cruel and unusual punishment).

Here, Burley was ordered to stand in freezing rain for 10 to 12 minutes. He was expelled from the school building and prevented from returning to his housing unit 40 yards away to seek shelter. The magistrate judge characterized that exposure as "a short period of time," which, in isolation, perhaps it was. But there was no "penological justification" for that conduct, and in light of Burley's medical condition, it can fairly be said that "the officials involved acted with 'deliberate indifference' to the inmates' health . . . ." *Hope*, 536 U.S. at 737. What's more, though, is that the defendants required Burley to remain in his saturated clothing for another two hours instead of allowing him to return to his housing unit to change into dry clothing. Additionally, the defendants knew of Burley's respiratory conditions, which made him particularly susceptible to harm from exposure to severe cold conditions. The combination of circumstances "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as . . . warmth . . . ." *Wilson*, 501 U.S. at 304.

When viewing the record in the light most favorable to Burley, it is clear that he has shown that the right to be free from exposure to severe weather and temperatures was clearly established at the time of the incident alleged in the complaint. Defendants Miller and Heilman, therefore, are not entitled to qualified immunity at this stage of the case.

-14-

D.

In his fifth objection, Burley argues that the magistrate judge made an inaccurate finding that defendant Bosworth was unaware of Burley's respiratory problems at the time of the incident. Burley contends that he informed Bosworth, and indeed Bosworth acquiesced to the actions of his subordinate officers. The defendants argue that the record does not show any involvement by defendant Bosworth in the incident.

The magistrate judge recommended granting the motion for summary judgment as to defendant Bosworth because he was unaware of Burley's respiratory problems at the time of the incident, and because the plaintiff did not allege that Bosworth was personally involved in the incident. It appears, however, that the magistrate judge overlooked certain facts that Burley alleged in the complaint and his affidavit in support of his response to the defendants' motion for summary judgment. In the complaint, Burley alleges that defendant Bosworth

> immediately [became] aware of the order to stand out in the rain, however he endorsed [Miller and Heilman]s' order by directly telling [Burley], "It's not gonna hurt you to stand out in the rain." He refused to hear [Burley's] health concerns and told [him] to stand out in freezing rain until volunteers arrived.

Compl. at 3.

> In his affidavit, Burley averred:
>
> I was ordered by Defendants Miller, Heilman, Bosworth to stand out in freezing rain for a period of time, without proper winter attire. I voiced my objection stating that I had asthma and other respiratory complications that would affect my health. Miller, Bosworth, and Heilman all stated that didn't concern them, and for me to depart the building.
>
> . . .
>
> I personally informed Bosworth of my breathing complications. He stated he did not care and standing out in the rain wasn't gonna hurt me. All Defendants' with the exception of Capt. B. Kilchermann, personally had first-hand knowledge that I

-15-

suffered from asthma and other breathing complications. However, they disregarded that risk to my health and safety by making me wait out in freezing rain. As a direct result, I suffered several breathing episodes and pneumonia as a result.

Burley Aff. ¶¶ 1, 4.

These record statements contradict the defendants' response to Burley's objection that the record does not show any involvement by defendant Bosworth. The record contains evidence of defendant Bosworth's involvement in the incident and his knowledge of Burley's respiratory ailments. The Court, therefore, will sustain Burley's fifth objection. Defendant Bosworth is in the same position as defendants Miller and Heilman on the plaintiff's Eighth Amendment claim.

E.

In his fourth objection, Burley argues that the magistrate judge erred by not considering violations under the Americans with Disabilities Act (ADA), as breathing is a constitutionally protected bodily function. Burly concedes that he did not make an ADA claim specifically, but, he argues, that he alleged that he has severe respiratory conditions and the magistrate judge should have considered ADA violations. The defendants argue that Burley offers no legal support that his ADA argument has any relevance to a section 1983 claim, and his objection should therefore be overruled. In his seventh objection, Burley also raises for the first time a state-created danger theory of liability.

Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived. *Ward v. United States*, 208 F.3d 216, *1 (6th Cir. 2000) (table decision) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996)); *see, e.g.*, *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) (holding that "an unsuccessful party is not entitled as of right to de novo review . . . of an argument never seasonably raised before the magistrate"); *Greenhow v. Secretary of Health & Human Servs.,* 863 F.2d 633,

-16-

638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by United States v. Hardesty,* 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc).

Burley never presented an ADA theory to the magistrate judge.  Although a *pro se* litigant's filing is to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "[t]he leniency granted *pro se* litigants . . . is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).  The Court does not comb the record with an eye to extracting possible theories of recovery.  If the plaintiff — even a *pro se* plaintiff — does not give some notice of an intent to advance a claim, the Court will not do it for him.  The Court's role is adjudicatory; it is not an advocate.  There is simply no indication in any of Burley's other filings that he intended bring a claim under the ADA or a state-created danger theory of liability.

F.

In his sixth objection, Burley argues that the magistrate judge erred by failing to address his intentional infliction of emotional distress claim.  The defendants argue that because the report recommends granting summary judgment on Burley's federal claims, this Court would lack jurisdiction over any state claims.  Moreover, they argue that Burley has failed to state a claim of intentional infliction of emotional distress.

In the complaint, Burley alleges that he was "subjected to intentional infliction of emotional distress" by the defendants.  He alleges that he suffered medical consequences as a direct result of the defendants' actions.  However, the magistrate judge did not err in failing to address the state tort

-17-

claim.  She did not address it because the defendants failed to raise the claim in their motion for summary judgment.

The defendants mistakenly believe that this court would lack jurisdiction over the plaintiff's state law claim if the federal claims are dismissed.  Under 28 U.S.C. § 1367, this Court has jurisdiction over claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  However, "[a] district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).  "As a result, 'the [district] court's exercise of its discretion under § 1367(c) is not a jurisdictional matter." *Id*. at 640 (alteration in original) (citing 16 J. Moore et al., Moore's Federal Practice § 106.05[4], p. 106–27 (3d ed. 2009)).

More need not be said here about that issue, however, because some of the plaintiff's federal claims survive the defendants' motion for summary judgment.

G.

The plaintiff has not objected to the magistrate judge's recommendation to dismiss his First Amendment retaliation claim, or the recommendation to dismiss the case against Captain Barker and deny the request to substitute Captain Kilcherman in his place.  Absent objection, those recommendations will be adopted.  *McClanahan*, 474 F.3d at 837.

III.

After giving fresh review to the defendants' motion for summary judgment, in light of the magistrate judge's report and recommendation and the plaintiffs' objections, the Court finds that the

-18-

magistrate judge did not reach the correct result on the question of defendant Bosworth's liability on the plaintiff's Eighth Amendment claim and the entitlement to qualified immunity for defendants Miller, Heilman, and Bosworth.  The Court will sustain in part and overrule in part the plaintiff's objections and grant in part and deny in part the defendants' motion for summary judgment.

Accordingly, it is **ORDERED** that the plaintiff's objections [dkt. #27] are **SUSTAINED IN PART AND OVERRULED IN PART**.

It is further **ORDERED** that the magistrate judge's report and recommendation [dkt. #22] is **ADOPTED IN PART AND REJECTED IN PART.**

It is further **ORDERED** that the defendants' motion for summary judgment [dkt. #14] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiff's First Amendment retaliation claim, and all claims against defendant Captain Barker, are **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** in all other respects.

It is further **ORDERED** that the plaintiff's "Rule 56(f) Motion [dkt. #25] is **DENIED**.

It is further **ORDERED** that the matter is referred to Magistrate Judge Mona K. Majzoub under the previous reference order [dkt. #7] to ready the matter for trial, and to conduct a trial if the parties consent under 28 U.S.C. § 626(b)(1)(c).

It is further **ORDERED** that the magistrate judge refer the case to the Court's *pro bono* administrator for appointment of *pro bono* counsel for the plaintiff.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 13, 2017

-19-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 13, 2017.

s/Susan K Pinkowski
SUSAN K. PINKOWSKI